UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN A. FAIRWEATHER, | : CIVIL NO: 3:25-cv-02172 |
| | : |
| Plaintiff, | : (Magistrate Judge Schwab) |
| | : |
| v. | : |
| | : |
| JUDGE MICHAEL J. BARRASSE, | : |
| *et al.*, | : |
| | : |
| Defendants. | : |

## REPORT AND RECOMMENDATION

### I. Introduction.

Plaintiff Sean A. Fairweather complains about events surrounding his state criminal proceedings. After screening Fairweather's complaint, we conclude that some of Fairweather's claims are barred by the favorable-termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), that Fairweather lacks standing as to some claims, that some of the defendants are entitled to immunity, and that the complaint otherwise fails to state a claim upon which relief may be granted. And because granting Fairweather leave to amend would be futile, we recommend that the court dismiss the complaint. We also recommend that the court deny Fairweather's request for a preliminary injunction. Finally, we recommend that the court close this case.

## II.  Background.

Fairweather, proceeding *pro se*, began this action by filing a complaint. *Doc. 1*. He also filed an application for leave to proceed *in forma pauperis*, which we subsequently granted. *Docs. 8, 9*.  The complaint names five identified defendants: (1) Judge Michaeal J. Barrasse, a judge of the Court of Common Pleas of Lackawanna County, Pennsylvania; (2) Thomas McDonald, a former Scranton Police Detective; (3) Kurt Lynott, Esquire, a criminal defense attorney; (4) ADA Martinelli, an assistant Lackawanna County district attorney; and (5) Ernest D. Preate, Esquire, a criminal defense attorney. *See doc. 1* at 1 (caption), 3. Fairweather also names an unknown number of John Does with the District Attorney's Office as defendants. *Id*. at 1 (caption), 3–4.

Fairweather's claims relate to state criminal proceedings, and he references the docket number of a state criminal case as well as attaching the first page of the docket sheet of that case to his complaint. *Doc. 1* at 5; *Doc. 1-1*.[1]  According to the

---

[1] The docket sheet for that case as well as the docket sheets for an earlier criminal case against Fairweather (discussed later) and Fairweather's state appeals are available on the Unified Judicial System of Pennsylvania Web Portal, https://ujsportal.pacourts.us/CaseSearch (last visited April 23, 2026).  The court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  The dockets in Fairweather's criminal case are public records of which we can take judicial notice. *See Wilson v. McVey*, 579 F. Supp. 2d 685, 688 (M.D.

Court of Common Pleas docket sheet in the case to which Fairweather refers—

*Commonwealth v. Fairweather*, CP-35-CR-0001631-2017 (Lackawanna Cnty.)—

the state proceedings began with an arrest of Fairweather on May 11, 2017,

Fairweather subsequently pleaded guilty to criminal use of a communication

facility, and he was sentenced to a term of imprisonment of 355 days to 36 months

to be followed by a one-year term of probation.  It appears that after he completed

his term of imprisonment, his probation was revoked, and a judgment of sentence

of one year of probation was imposed on February 25, 2025.[2]  He appealed that

sentence to the Pennsylvania Superior Court, and that appeal is still pending. *See*

*Commonwealth v. Fairweather*, No. 512 MDA 2025 (Pa. Super. Ct.), and

*Commonwealth v. Fairweather*, No. 513 MDA 2025 (Pa. Super. Ct.).[3]

---

Pa. 2008) (taking judicial notice of court docket); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (stating that court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity").

[2] Fairweather's probation in an earlier case—*Commonwealth v. Fairweather*, CP-35-CR-0000505-2013 (Lackawanna Cnty.)—was also revoked, and he was sentenced on February 25, 2025, in that case to 18 to 36 months confinement to be followed by two years probation.  The docket sheet in CP-35-CR-0001631-2017 (Lackawanna Cnty.) indicates that Fairweather's probation in this case is consecutive to the confinement and probation in his earlier case— CP-35-CR-0000505-2013 (Lackawanna Cnty.).

[3] The Superior Court appeal in No. 513 MDA 2025 is Fairweather's appeal in CP-35-CR-0001631-2017, and the Superior Court appeal in No. 512 MDA 2025

Construing Fairweather's complaint liberally, Fairweather alleges the following facts.  Fairweather is an African American citizen.  Defendant McDonald illegally pulled Fairweather over.[4]  There was no probable cause for the stop or subsequent criminal charge.  And McDonald made a false entry on a search warrant.  McDonald was corrupt, and in 2021, he was convicted.  According to Fairweather, due to exculpatory evidence of corruption and misconduct by McDonald, his guilty plea was involuntary.  Fairweather contends that the other defendants were aware of McDonald's misconduct, and although they should have corrected such, they did not.

Fairweather alleges that he has been pursuing his rights diligently in the Lackawanna Court of Common Pleas, and he alleges that he is actually innocent. He filed Post Conviction Relied Act petitions in 2018, 2021, and 2024.

Fairweather claims that as a result of the defendants' conduct, he suffered pain, mental anguish, and emotional distress.  According to Fairweather, although

---

is his appeal in CP-35-CR-0000505-2013.  The Superior Court consolidated the two appeals.

[4] Although Fairweather does not specifically allege the date that McDonald pulled him over, given the docket sheet that he attached to his complaint, it is clear that he is complaining about a stop that occurred in May 2017.  This is not the first civil rights case in which Fairweather complained about the events at issue arising from the May 2017 stop. *See Fairweather v. McDonald*, 3:24-cv-00054 (M.D. Pa.); *Fairweather v. Spathelf*, 3:24-cv-00352 (M.D. Pa.).

prior to the defendants' alleged misconduct, he was close with his friends and family, they have since rejected him, he is now viewed as unreliable, and he suffered and will continue to suffer ridicule and abandonment. He has been diagnosed with anxiety and PTSD, and he is currently on Lexapro. He also alleges that he suffers from depression, and he is having night terrors.

Fairweather contends that the defendants violated his right under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. He mentions malicious prosecution, false arrest, false imprisonment, denial of a fair trial, denial of equal protection, and misrepresentation.

As relief, Fairweather seeks an injunction "ordering a separation from defendants," asserting that he is in fear of retaliation. *Id*. at 19. He also seeks an investigation into the defendants. *Id*. Fairweather further seeks nominal, compensatory, and punitive damages. *Id*. at 19–20. And he seeks costs and any additional relief the Court "deems just, proper and equitable." *Id*.

After reviewing the complaint, we recommend that it be dismissed for failure to state a claim upon which relief may be granted.

## III.  Screening of *In Forma Pauperis* Complaints—Standard of Review.

This court has a statutory obligation to conduct a preliminary review of complaints brought by prisoners given leave to proceed *in forma pauperis* in cases

5

that seek redress against government officials. Specifically, the court must review the complaint in accordance with 28 U.S.C. § 1915A, which provides, in pertinent part:

> **(a) Screening.** The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b) Grounds for dismissal.** On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint
>
> **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> **(2)** seeks monetary relief from a defendant who is immune from such relief.

Similarly, under 28 U.S.C. § 1915(e)(2), the court shall dismiss a complaint brought *in forma pauperis* if it determines that certain specified conditions are met. More specifically, the court must dismiss a complaint that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Under both § 1915A(b)(1) and § 1915(e)(2)(B)(ii), the court must assess whether a complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When determining whether a complaint states a claim upon which relief can be granted, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to 'show' such an entitlement with its facts." *Id.*

7

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

8

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

In sum, "[w]e accept as true all factual matters [the plaintiff] alleges, but his complaint cannot survive unless the facts it recites are enough to state plausible grounds for relief." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (citing *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But "[a] claim that relies just on 'conclusory statements,' or on 'threadbare recitals of the elements of a cause of action' without supporting factual allegations, does not establish plausible grounds for relief." *Beasley*, 14 F.4th at 231 (quoting *Fischbein v. Olson Rsch. Grp., Inc.*, 959 F.3d 559, 561 (3d Cir. 2020)).

A complaint filed by a pro se litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). "Notwithstanding the rule of liberal construction, a pro se complaint may not survive dismissal if its factual allegations do not meet Iqbal's basic plausibility standard." *Beasley*, 14 F.4th at 231. "Fundamentally, Rule 8 requires that a complaint provide fair notice of 'what the .

. . claim is and the grounds upon which it rests.'" *Garrett*, 938 F.3d at 92 (quoting *Erickson*, 551 U.S. at 93).

## IV.  Federal Claims.

Fairweather brings constitutional claims under 42 U.S.C. § 1983.  In addition to bringing his constitutional claims under § 1983, Fairweather makes passing references to several other federal statutes.  But those statutes either have no application here, do not create a private right of action, or both.

Fairweather references 12 U.S.C. § 504, which "imposes penalties on banks for an array of misconduct." *Dalicier v. Shively Motors*, No. 1:24-CV-175, 2024 WL 1545212, at *3 (M.D. Pa. Mar. 7, 2024), *report and recommendation adopted,* 2024 WL 3391105, at *1 (M.D. Pa. May 8, 2024).  But Fairweather is not suing a bank.  Further, the imposition of penalties under § 504 "is carried out by federal officials." *Id*.  And private individuals cannot enforce that provision. *Id*.

Fairweather also mentions 18 U.S.C. § 1956, a criminal provision dealing with money laundering, which is not at issue here, and under which there is no private right of action. *See Karupaiyan v. Singh*, No. 21-3163, 2022 WL 6634603, at *1 (3d Cir. Mar. 1, 2022) (concluding that 18 U.S.C. § 1956 does not create a private cause of action).  He also references 18 U.S.C. § 1519, a criminal provision dealing with the "Destruction, alteration, or falsification of records in Federal

investigations and bankruptcy," which is not applicable here, and under which there is no private right of action. *See Shaw v. City of Philadelphia*, No. 25-CV-2941, 2025 WL 1689393, at *3 (E.D. Pa. June 13, 2025) (concluding that there is no private cause of action under 18 U.S.C. § 1519).

Fairweather also makes passing references to 18 U.S.C. § 1583 ("Enticement into Slavery") and 18 U.S.C. § 1593A ("Benefitting financially from peonage, slavery, and trafficking in persons"). Although 18 U.S.C. § 1595(a) provides a civil remedy for a victim of a violation of these sections, Fairweather has not alleged facts plausibly suggesting that he was the victim of peonage, slavery, or trafficking in persons. Nor could he plausibly allege such facts based on the events of which he is complaining.

In sum, Fairweather fails to state a claim upon which relief can be granted under any of the federal statutes he cites other than 42 U.S.C. § 1983. Thus, we turn to his claims under § 1983.

Fairweather is bringing constitutional claims under 42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal

11

constitutional or statutory right." *Id.* To establish a claim under §1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). As discussed below, the complaint fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted against the defendants for several different reasons.

### A. The favorable-termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).

The favorable-termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), bars some of Fairweather's claims. In *Heck*, the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such [a] determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 486–87 (footnote omitted). When a plaintiff seeks damages under § 1983, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the

12

plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

The "favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *McDonough v. Smith*, 588 U.S. 109, 117–18 (2019). "The requirement likewise avoids allowing collateral attacks on criminal judgments through civil litigation." *Id.* at 118.

When *Heck* applies, even if the plaintiff has exhausted available state remedies, he has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. *Heck,* 512 U.S. at 489. *Heck* applies to a conviction based on a guilty plea. *See Gilles v. Davis*, 427 F.3d 197, 209 n.8 (3d Cir. 2005) ("[U]nder *Heck*, both a guilty plea and an ARD are sufficient to bar a subsequent § 1983 claim.").

Fairweather is seeking damages based on claims that his guilty plea was involuntary, he was subject to malicious prosecution in violation of the Fourth Amendment, the defendants violated due process by fabricating evidence, and his Sixth Amendment right to the effective assistance of counsel was denied. Success on any of those claims would necessarily imply that his conviction is invalid. Fairweather has not alleged that his conviction has been reversed or overturned,

and the state court docket sheets show that it has not.[5]  Thus, those claims are

barred by the favorable-termination rule of *Heck*. *See McDonough*, 588 U.S. at

119–24 (concluding that similar to the claims in *Heck*, a due process fabrication-

of-evidence claim is "most analogous to a claim of common-law malicious

prosecution," and thus, such a claim accrues "[o]nly once the criminal proceeding

has ended in the defendant's favor, or a resulting conviction has been invalidated

within the meaning of *Heck*"); *Coello v. DiLeo*, 43 F.4th 346, 352-55 (3d Cir.

2022) (concluding that "because Coello's 1983 claims sound in malicious

prosecution," *Heck*'s favorable termination rule applies, and holding that "the

favorable-termination requirement was met . . . when the state court vacated

[Coello's] criminal conviction"); *Holmes v. Dreyer*, 431 F. App'x 69, 70–71 (3d

Cir. 2011) (concluding that "Holmes's claims regarding prosecutorial misconduct,

malicious prosecution, and ineffective assistance of counsel imply the validity of

his conviction and thus are not cognizable under *Heck*"); *Pankotai v.*

---

[5] Fairweather filed petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court. *See Fairweather v. Bainbridge*, 3:25-cv-00790 (M.D. Pa.); *Fairweather v. Barrasse*, 3:25-cv-02222 (M.D. Pa.).  Judge Mehalchick recently dismissed the petition in 3:25-cv-00790 without prejudice based on Fairweather's failure to exhaust state remedies, noting that Fairweather's appeal is still pending in the Superior Court. *See Fairweather v. Bainbridge* No. 3:25-CV-00790, 2026 WL 907585, at *2 (M.D. Pa. Apr. 2, 2026).  The petition in 3:25-cv-02222 remains pending before Judge Mehalchick. *See* docket in 3:25-cv-02222.

*Northumberland Cnty. Courthouse*, No. 4:16-CV-00004, 2017 WL 9532899, at *7 (M.D. Pa. June 14, 2017) (concluding that "under *Heck*, Pankotai's § 1983 claims arising out of his allegedly involuntary guilty plea are not cognizable under 28 U.S.C. § 1983"), *report and recommendation adopted*, 2017 WL 3225059, at *2 (M.D. Pa. July 31, 2017).

Claims barred by the favorable-termination rule of *Heck* must be dismissed without prejudice. *See Curry v. Yachera*, 835 F.3d 373, 380 (3d Cir. 2016) (explaining that a dismissal with prejudice based on *Heck* was error and modifying the order of dismissal based on *Heck* "to reflect that these claims are dismissed without prejudice"). "[A] § 1983 claim that attacks the validity of a plaintiff's conviction or sentence does not accrue for statute-of-limitations purposes until the underlying criminal case is favorably terminated." *Coello*, 43 F.4th at 353. And when a claim is barred by *Heck*'s favorable-termination rule, the plaintiff can renew such a claim "'if he ever succeeds in overturning his conviction[.]'" *Curry*, 835 F.3d at 379 (quoting *Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir. 1995)). That is why a dismissal based on *Heck* is without prejudice. *Id*.

Because Fairweather's claims for damages that his guilty plea was involuntary, that he was subject to malicious prosecution in violation of the Fourth Amendment, that the defendants violated due process by fabricating evidence, and that he was denied his Sixth Amendment right to the effective assistance of counsel

15

are barred by the favorable-termination rule of *Heck*, we will recommend that those claims be dismissed without prejudice.

In addition to damages, Fairweather seeks a declaratory judgment and injunctive relief. *See doc. 1* at 19.  The favorable-termination rule of *Heck* does not apply to "forward-looking" or "wholly prospective relief." *Olivier v. City of Brandon, Mississippi*, 146 S. Ct. 916, 924 (2026).  But, as discussed below, Fairweather lacks standing to seek prospective injunctive relief, and his request for declaratory relief is not proper.

### B.  Injunctive Relief.

Fairweather alleges that he fears retaliation, and he requests a preliminary injunction ordering a separation from the defendants and an investigation of the defendants. *Doc. 1* ¶ 27.  But he has not alleged facts from which it can reasonably be inferred that he is at imminent risk of retaliation from defendants such that he has standing to seek injunctive relief.

"It is well established that a federal court has a duty to assure itself that the persons invoking its power have standing to do so under Article III of the Constitution." *Wayne Land & Mineral Grp., LLC v. Delaware River Basin Comm'n*, 959 F.3d 569, 570 (3d Cir. 2020).  Article III standing "is an 'irreducible constitutional minimum,' without which a court" does not have jurisdiction to

16

decide the case on the merits. *Id*. at 574 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  And "[w]here, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id*. (footnote omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  Further, plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

"Standing to seek injunctive relief requires a plaintiff to show (1) 'that he is under threat of suffering 'injury in fact' that is concrete and particularized'; (2) 'the threat must be actual and imminent, not conjectural or hypothetical'; (3) 'it must be fairly traceable to the challenged action of the defendant'; and (4) 'it must be likely that a favorable judicial decision will prevent or redress the injury.'" *Free Speech Coal., Inc. v. Attorney Gen. United States*, 825 F.3d 149, 165–66 (3d Cir. 2016) (quoting *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009)).  Thus, "the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct." *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).  And "[m]ere 'allegations

17

of possible future injury are not sufficient.'" *Schaller v. United States Soc. Sec. Admin.*, 844 F. App'x 566, 571 (3d Cir. 2021) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Rather, "the 'threatened injury must be certainly impending to constitute injury in fact.'" *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 893 (3d Cir. 2020) (quoting *Clapper*, 568 U.S. at 409). "And there must be at least a 'substantial risk' that the harm will occur." *Id.* (quoting *Clapper*, 568 U.S. at 414 n.5).

"Evidence of past exposure to illegal conduct does not automatically justify an injunction against future violations, but it is relevant as a launching pad for a showing of imminent future injury[.]" *Road-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 355 (3d Cir. 2024) (internal quotation marks and citations omitted). In other words, where a plaintiff is seeking "forward-looking relief, [] past injuries are relevant only for their predictive value." *Murthy v. Missouri*, 603 U.S. 43, 59 (2024).

Here, Fairweather has not alleged facts from which it can reasonably be inferred that he is under threat of suffering an actual and imminent future injury. Again, as set forth earlier, Fairweather's state criminal case is on appeal to the Superior Court of Pennsylvania. And there are no allegations that the named defendants are involved in that appeal, that the defendants would otherwise be in a position to retaliate against Fairweather, or any facts plausibly suggesting that they

18

would retaliate against Fairweather.  In sum, Fairweather has not alleged standing for injunctive relief, and it is unlikely that he could do so.

## C.  Declaratory Relief.

Liberally construing Fairweather's complaint, he asks the court to declare that "[t]he acts and omissions described herein violated [his] rights under the Constitution and laws of the United States." *Doc. 1* at 19.  Such a request to declare past conduct unconstitutional is not a proper request for a declaratory judgment.

"The purpose of a declaratory judgment is to 'declare the rights of litigants.'" *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).  Although "[t]here is no question that a plaintiff can request declaratory relief to remedy alleged ongoing violations of her constitutional rights[,]" a "[d]eclaratory judgment is not meant to adjudicate alleged past unlawful activity." *Wenzig v. Serv. Emps. Int'l Union Loc. 668*, 426 F. Supp. 3d 88, 100 (M.D. Pa. 2019), *aff'd sub nom. Diamond v. Pennsylvania State Educ. Ass'n*, 972 F.3d 262, 265 (3d Cir. 2020). "The remedy is thus by definition prospective in nature." *CMR D.N. Corp.*, 703 F.3d at 628.

19

Here, Fairweather does not plausibly allege an ongoing violation of federal law. Again, as set forth earlier, Fairweather's state criminal case is on appeal to the Superior Court of Pennsylvania. There are no allegations that the named defendants are involved in that appeal. And Fairweather seeks a declaration about what the defendants did in the past. Thus, Fairweather is not truly seeking prospective declaratory relief. Accordingly, his request for such should be denied.

### D. Other 42 U.S.C. § 1983 Claims for Damages.

To the extent that Fairweather brings other 42 U.S.C. § 1983 claims for damages that are not barred by the favorable-termination rule of *Heck*, as discussed below, Fairweather fails to state a claim upon which relief can be granted as to those claims or the defendants are entitled to immunity from those claims.

### 1. Defendant McDonald.

Fairweather's remaining claims against McDonald, Fourth Amendment false arrest, false imprisonment, and unreasonable search claims, are barred by res judicata. In a prior case—*Fairweather v. McDonald*, 3:24-cv-00054 (M.D. Pa.) ("*Fairweather I*")—Fairweather brought claims against McDonald based on his arrest on May 12, 2017, and a search based on a warrant by McDonald. *See doc. 1* (complaint); *doc. 9* (amended complaint); *doc. 11* (another amended complaint) in

3:24-cv-00054.  Judge Munley dismissed Fairweather's complaint and amended complaints in *Fairweather I* pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) because the complaints failed to state a claim upon which relief can be granted given that the statute of limitations barred the claims. *See docs*. 10, 12 in 3:24-cv-00054.  And she denied Fairweather's motions pursuant to Fed. R. Civ. P. 59 and 60, in which Fairweather argued that the statute of limitations should be tolled. *See docs*. 14, 17 in 3:24-cv-00054.

Because Fairweather's complaint in the instant case concerns the same events regarding McDonald as did his complaint and amended complaints in *Fairweather I*, res judicata bars this action.

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).  And "[t]he preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Id*. at 892.  Claim preclusion and issue preclusion "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Res judicata is an affirmative defense that a defendant generally must plead in an answer. *See* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . .  res

21

judicata . . . .).  Nevertheless, an affirmative defense can be the basis for a dismissal for failure to state a claim upon which relief can be granted if the affirmative defense is "'apparent on the face of the complaint.'" *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 280 (3d Cir. 2016) (quoting *Rycoline Prod., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997)).  And a court may consider matters of public record when considering whether to dismiss a complaint for failure to state a claim based on res judicata. *Id*.  Thus, "[d]ismissal for failure to state a claim is appropriate when it is obvious, either from the face of the pleading or from other court records, that an affirmative defense such as res judicata will necessarily defeat the claim." *McLaughlin v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 686 F. App'x 118, 121 (3d Cir. 2017); *see also Curbison v. United States*, No. 25-2893, 2026 WL 788901, at *1 (3d Cir. Mar. 20, 2026) ("Though res judicata is an affirmative defense, it is appropriate for a court to raise the issue sua sponte if the court is on notice that it has decided the issue previously. . . . Given that Curbison filed Case 1 and the instant case in the same court, the District Court was on notice that the issue had previously been decided, and properly raised the issue of claim preclusion sua sponte.").  And since the standard for dismissal under 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B)(ii) based on failure to state a claim upon which relief may be granted mirrors the standard for dismissal under Rule 12(b)(6) for failure to state a claim upon which

22

relief can be granted, it follows that res judicata can be the basis for dismissal under § 1915A(b)(1) and § 1915(e)(2)(B)(ii) provided that the elements of res judicata are clear from the face of the complaint or from public records. *See Collazo v. Mount Airy No. 1 LLC*, 723 F. App'x 147, 151 n.5 (3d Cir. 2018) (noting that it was "permissible in this case for the Magistrate Judge and District Court to apply res judicata at the screening stage" under 28 U.S.C. § 1915(e)(2)(B)(ii)).  At the screening stage, "the Court may raise the issue of *res judicata sua sponte.*" *Thomas v. Koleno*, No. 3:25-CV-1145, 2025 WL 1920419, at *3 (M.D. Pa. July 11, 2025); *see also Dover v. Laskoskie*, No. 21-2678, 2022 WL 1576759, at *2 (3d Cir. May 19, 2022) ("[W]e are not troubled by the District Court's application of the res judicata doctrine—normally wielded by parties as an affirmative defense, see Fed. R. Civ. P. 8(c)—at the screening stage.  Given the District Court's familiarity with Dover's serially presented, previously litigated claims, dismissal under § 1915(e)(2)(B)(ii) on res judicata grounds was appropriate.").

"The doctrine of claim preclusion (the here-relevant aspect of res judicata) prohibits 'successive litigation of the very same claim' by the same parties." *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 599 (2016) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).  For claim

23

preclusion to apply, three elements must be satisfied: "(1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same cause of action." *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 172 (3d Cir. 2009). Here, the three elements are satisfied.

The first element—a final judgment on the merits in the prior suit—is satisfied because the dismissal in *Fairweather I* on the basis of the statute of limitations was a final judgment on the merits. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"); *Porter v. Cancelmi*, 318 F. App'x 48, 50 n.2 (3d Cir. 2008) (noting that "dismissal of an *in forma pauperis* complaint for failure to state a claim under § 1915(e)(2)(B)(ii) constitutes a final judgment on the merits" at least "where, as here, the second suit also is brought *in forma pauperis*").

The second element—the same parties or their privies—is satisfied because in both this case and in *Fairweather I*, Fairweather sued McDonald.

The third element—the same cause of action—is satisfied because the claims against McDonald in this case are based on the same causes of action as in *Fairweather I*. As in *Fairweather I,* in the instant action, Fairweather presents claims against McDonald based on the events of May 2017. *Compare doc. 1 with docs. 1, 9, 11* in *Fairweather I.* "'[R]es judicata bars not only claims that were

24

brought in the previous action, but also claims that could have been brought.'" *Elkadrawy*, 584 F.3d at 173 (quoting *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007)). "[W]e take a broad view of what constitutes the same cause of action and . . . res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims." *Davis v. Wells Fargo*, 824 F.3d 333, 342 (3d Cir. 2016) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (internal quotation and italics omitted)). "In short, the focus is on facts rather than legal theories." *Id*. Thus, "[r]*es judicata* bars a claim that 'arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation.'" *Id*. (quoting *Blunt*, 767 F.3d at 277). Here, because Fairweather's claims against McDonald in both the instant case and *Fairweather I* are based on the events of May 2017, he is raising the same cause of action in this case as he did in *Fairweather I*.

Given that all three elements for res judicata are satisfied based on the face of the complaint in this case and the public records in *Fairweather I*, the complaint fails to state a claim upon which relief may be granted against defendant McDonald based on the doctrine of res judicata.

Even if the claims against McDonald based on the May 2017 stop and search were not barred by res judicata, they are barred by the statute of limitations.

Although the statute of limitations is an affirmative defense, a court can dismiss a complaint based on the statute of limitations when "the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 1 (3d Cir.1994).  But "'[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Schmidt v. Skolas,* 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

"A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims." *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  Pennsylvania, the applicable state in this case, mandates a two-year statute of limitations for personal injury claims. 42 Pa. C.S.§ 5524(2).  Thus, a § 1983 claim arising in Pennsylvania is subject to a two-year statute of limitations. *Fitzgerald v. Larson*, 769 F.2d 160, 162 (3d Cir. 1985).

A § 1983 cause of action "'accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.'" *Dique*, 603 F.3d at 185-86 (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).  In other words, the cause of action accrues "when the plaintiff has 'a complete and present cause of

action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 549 U.S. at 388 (citations omitted).  Thus, "[u]nder federal law, a cause of action accrues ""'when the plaintiff knew or should have known of the injury upon which the action is based.'"" *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014) (quoting *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009), which in turn was quoting *Sameric Corp. v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir.1998)).

Here, Fairweather's causes of action that are not barred by the favorable-termination rule of *Heck* and that are based on the events in May 2017 accrued in May 2017.  Fairweather did not file the current action until November 2025, approximately eight and a half years later.  Thus, those claims are barred by the two-year statute of limitations.[6]  Judge Munley ruled as such in *Fairweather I. See docs*. 10, 12 in 3:24-cv-00054.  So has Judge Saporito in *Fairweather v. Spathelf*, 3:24-cv-00352 (M.D. Pa.) (*doc. 20*—partially dismissing with prejudice for failure to state a claim based on the stature of limitations Fairweather's § 1983 unreasonable search claims against defendant McDonald (and another defendant-

---

[6] The statute of limitations also bars any claims against the other defendants that are not barred by the favorable-termination rule of *Heck* and that are based on the stop and search in May 2017.

Ossont) based on the May 2017 search, but allowing claims to go forward against defendant Spathelf based on a different search in April 2023).

### 2. Judge Barrasse.

Judge Barrasse is entitled to judicial immunity as to any of Fairweather's claims against him in his individual capacity that are not barred by the favorable-termination rule of *Heck*. "The Supreme Court long has recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts." *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d Cir. 2000). The Court has described the reasons for recognizing judicial immunity as follows:

> [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have . . . . [T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided. If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.

*Forrester v. White*, 484 U.S. 219, 226–27 (1988) (citations omitted).

We engage in a two-part inquiry to determine whether judicial immunity is applicable. *Gallas,* 211 F.3d at 768.  First, because immunity applies only to actions taken in a judge's judicial capacity, we must determine whether the challenged actions of the judge were taken in his or her judicial capacity. *Id.*  The relevant factors "relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.'" *Id.* at 768–69 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  "Our task is to 'draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges,' such as administrative acts." *Id.* at 769 (quoting *Forrester,* 484 U.S. at 227).

"Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 768.  In this regard, "we must distinguish between acts in the 'clear absence of all jurisdiction,' which do not enjoy the protection of absolute immunity, and acts that are merely in 'excess of jurisdiction,' which do enjoy that protection." *Id.* at 769 (quoting *Stump*, 435 U.S. at 356 n.6).  Judicial immunity shields a judge from liability for judicial acts even if those acts were taken in error, if they were done maliciously, if they were in excess of the judge's authority, if the judge committed grave procedural errors, or if the judge's actions were unfair or controversial. *Id.*  A judge will be subject to

29

liability only when he or she has acted in the clear absence of all jurisdiction. *Id.* "In sum, our analysis must focus on the general nature of the challenged action, without inquiry into such 'specifics' as the judge's motive or the correctness of his or her decision." *Id.*

Here, Fairweather's allegations regarding Judge Barrasse relate to actions taken by Judge Barrasse in his capacity as a judge overseeing a criminal case in the Court of Common Pleas, and his actions were not taken in the clear absence of jurisdiction. Accordingly, Judge Barrasse is entitled to judicial immunity from Fairweather's § 1983 claim for damages against him.

Further, the Eleventh Amendment bars Fairweather's claims for damages against Judge Barrasse in his official capacity.

"The Pennsylvania constitution provides for the vesting of the Commonwealth's judicial power in a "unified judicial system" which includes all of the courts in Pennsylvania." *Callahan v. City of Philadelphia*, 207 F.3d 668, 672 (3d Cir. 2000) (quoting Pa. Const. art. V, § 1.). "Moreover, the constitution provides that the Pennsylvania Supreme Court will exercise 'general supervisory and administrative authority' over the unified judicial system." *Id*. (quoting Pa. Const. art. V, §§ 1, 2, and 10.) Thus, "[a]ll courts and agencies of the unified judicial system . . . are part of 'Commonwealth government' and thus are state rather than local agencies." *Id*. (citing Pa. Const. art. V, § 6(c); 42 Pa. Cons. Stat.

30

Ann. § 102; 42 Pa. Cons. Stat. § 301). As such, they are entitled to Eleventh Amendment immunity. *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005) ("The Pennsylvania constitution envisions a unified state judicial system, of which the Judicial District is an integral component. From a holistic analysis of the Judicial District's relationship with the state, it is undeniable that Pennsylvania is the real party in interest in Benn's suit and would be subjected to both indignity and an impermissible risk of legal liability if the suit were allowed to proceed."); *see also Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (concluding that "as an arm of the State, an individual judicial district and its probation and parole department are entitled to Eleventh Amendment immunity," but holding that in that case, the Eleventh Amendment immunity was waived by acceptance of federal funds under the Rehabilitation Act).

The Court of Common Pleas of Lackawanna County is a part of the state and is entitled to Eleventh Amendment immunity. Judge Barrasse in his official capacity is also entitled to Eleventh Amendment immunity. Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978). In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such,

claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013). Because Judge Barrasse is a judge of Court of Common Pleas of Lackawanna County, which is a Commonwealth entity, the damages claims against him in his official capacity are really claims against the Commonwealth and, as such, are barred by the Eleventh Amendment. Thus, we recommend that those claims be dismissed without prejudice. *See Merritts v. Richards*, 62 F.4th 764, 769 (3d Cir. 2023) ("Although several of [Merritt's] § 1983 claims needed to be dismissed on Eleventh Amendment and *Rooker-Feldman* grounds, those dismissals should have been without prejudice."); *New Jersey Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 n.8 (3d Cir. 2011) (noting that the "dismissal for lack of subject matter jurisdiction was by definition without prejudice"); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999) (agreeing with plaintiff that because a dismissal for lack of subject-matter jurisdiction "is not an adjudication on the merits," such a dismissal should be "without prejudice.")

### 3. Defendants Lynott and Preate.

Fairweather brings claims against defendants Lynott and Preate, his former counsel in state court. To the extent that Fairweather is brining any 42 U.S.C.

32

§ 1983 claims against Lynott and Preate that are not barred by the favorable-termination rule of *Heck*, those claims fail because Lynott and Preate were not acting under color of state law.

"Action under color of state law 'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Harvey v. Plains Twp. Police Dept.*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting *Abbott v. Latshaw,* 164 F.3d 141, 146 (3d Cir.1998)).  The Supreme Court has established several approaches to the question of when a private person acts under color of state law. *Crissman v. Dover Downs Entertainment, Inc.*, 289 F.3d 231, 239 (3d Cir. 2002). The United States Court of Appeals for the Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) 'whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state'; (2) 'whether the private party has acted with the help of or in concert with state officials'; and (3) whether 'the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.'" *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).  "The inquiry is fact-specific," *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995), and "state action may be found if,

33

though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Academy v. Tennessee Secondary School Athletic Assoc.,* 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974)).

"[T]he relevant question is not whether the private actor and the state have a close relationship generally, but whether there is 'such a close nexus between the State and *the challenged action* that seemingly private behavior may be fairly treated as that of the State itself.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (emphasis in original) (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)). "In other words, the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

An otherwise private actor may act under color of state law when engaged in a conspiracy with a state official. *Dennis v. Sparks*, 449 U.S. 24, 29 (1980). "The essence of a conspiracy is an agreement." *United States v. Kelly,* 892 F.2d 255, 258 (3d Cir. 1989). "To demonstrate the existence of a conspiracy under § 1983, 'a

34

plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *LeBlanc v. Stedman*, 483 F. App'x 666, 670 (3d Cir. 2012) (quoting *Parkway Garage, Inc. v. City of Phila.,* 5 F.3d 685, 700 (3d Cir.1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington,* 316 F.3d 392 (3d Cir. 2003)). Because direct evidence of a conspiracy is rarely available, the existence of a conspiracy may be inferred from the circumstances. *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009). Still, to plead a conspiracy, a plaintiff must allege "facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "To properly plead such an agreement, 'a bare assertion of conspiracy will not suffice.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

Here, Fairweather attempts to hold Attorneys Lynott and Preate liable under § 1983 based on actions—or inactions—during their representation of him in connection with his state criminal proceedings. But the conduct of a defense attorney representing a client in a criminal case does not by itself rise to the level of state action entitling a state prisoner to bring a federal civil-rights actions against his own prior counsel. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (holding that a public defender does not act under color of state law when performing a

35

lawyer's traditional functions as counsel to a defendant in a criminal proceeding). And Fairweather has not alleged facts that show that Lynott or Preate conspired with a state actor to violate his rights. Accordingly, the complaint fails to state a 42 U.S.C. § 1983 claim upon which relief may be granted against Lynott and Preate.

### 4.  ADA Martinelli and the John Does.

Fairweather presents claims against Assistant District Attorney Martinelli and the John Does with the District Attorney's Office based on their prosecution of him. But, as explained below, "a state prosecuting attorney who acted within the scope of [his or her] duties in initiating and pursuing a criminal prosecution is" entitled to immunity from suit under 42 U.S.C. § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). Thus, to the extent any claims against these defendants are not barred by the favorable-termination rule of *Heck*, the defendants are entitled to prosecutorial immunity.

"The text of § 1983 does not provide any immunities from suit." *Fogle v. Sokol*, 957 F.3d 148, 158 (3d Cir. 2020). "Although § 1983 purports to subject '[e]very person' acting under color of state law to liability for depriving any other person in the United States of 'rights, privileges, or immunities secured by the Constitution and laws,' the Supreme Court has recognized that §1983 was not

36

meant to 'abolish wholesale all common-law immunities.'" *Yarris v. Delaware,* 465 F.3d 129, 134–35 (3d Cir. 2006) (quoting *Pierson v. Ray,* 386 U.S. 547, 554 (1967)).  There are two kinds of immunity under § 1983: qualified immunity and absolute immunity. *Id.* at 135.  Although most public officials are entitled to only qualified immunity, public officials who perform "'special functions'" are entitled to absolute immunity. *Id.* (quoting *Butz v. Economou,* 438 U.S. 478, 508 (1978)). "[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006).  "This immunity was and still is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" *McArdle v. Tronetti,* 961 F.2d 1083, 1084 (3d Cir. 1992) (quoting *Butz,* 438 U.S. at 512).

A functional approach is used to determine the immunity of a prosecutor. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997).  "The functions of the prosecutor encompass activities protected by both absolute and qualified immunity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992).  The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it, and "[u]nder this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or 'quasi-judicial' capacity." *Odd v. Malone,* 538

37

F.3d 202, 208 (3d Cir. 2008).  "That functional test separates advocacy from everything else, entitling a prosecutor to absolute immunity only for work 'intimately associated with the judicial phase of the criminal process.'" *Fogle*, 957 F.3d at 159–60 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).  Thus, for example, a prosecutor is entitled to absolute immunity from a claim based on a prosecutor "initiating a prosecution and in presenting the State's case." *Imbler,* 424 U.S. at 431.  A prosecutor is also entitled to absolute immunity for the preparation and filing of charging documents and arrest warrants. *Kalina,* 522 U.S. at 129. Absolute immunity does not, however, apply "'to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.'" *Weimer v. Cnty. of Fayette*, 972 F.3d 177, 187 (3d Cir. 2020) (quoting *Odd*, 538 F.3d at 208).

"Our analysis of whether a prosecutor is entitled to absolute immunity 'has two basic steps, though they tend to overlap.'" *Roberts v. Lau*, 90 F.4th 618, 625 (3d Cir. 2024) (quoting *Fogle*, 957 F.3d at 161).  Under the first step, "we ascertain just what conduct forms the basis for the plaintiff's cause of action." *Id*. (internal quotation marks and citations omitted).  Under the second step, "we determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served[.]" *Id*. (internal quotation marks and citations omitted).

Here, Fairweather is complaining about Assistant District Attorney Martinelli and the John Does with the District Attorney's Office prosecution of

him.  And Fairweather has not alleged that these defendants engaged in any conduct outside of their prosecutorial function.  Accordingly, defendants Assistant District Attorney Martinelli and the John Does with the District Attorney's Office are entitled to absolute prosecutorial immunity as to Fairweather's claims against them in their individual capacities.

Fairweather is suing ADA Martinelli and John Does with the district attorney's office in their official capacities as well as their individual capacities. *See doc. 1* ¶ 10.  Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55.  In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Here, as to Fairweather's claim against ADA Martinelli and John Does in their official capacities, the real party in interest is Lackawanna County.  But Fairweather fails to state a claim upon which relief can be granted against the prosecutors in their official capacities because Fairweather has not alleged facts that plausibly support such a claim.

A municipal entity, such as Lackawanna County, cannot be held liable under 42 U.S.C. § 1983 for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691.  Rather, "under § 1983, local

governments are responsible only for 'their *own* illegal acts.'" *Connick v.
Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475
U.S. 469, 479 (1986) (emphasis in original)).

"[A] § 1983 claim against a municipality may proceed in two ways." *Forrest
v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  One way for a plaintiff to present a
claim against a municipality is to allege "that an unconstitutional policy or custom
of the municipality led to his or her injuries." *Id*.  Another way for a plaintiff to
present a claim against a municipality is to allege that his injuries "were caused by
a failure or inadequacy by the municipality that 'reflects a deliberate or conscious
choice.'" *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d
Cir. 2019)).

To plead a claim against a municipality under the policy-or-custom strand of
municipal liability, "a plaintiff must allege that 'a [local] government's policy or
custom . . . inflict[ed] the injury' in question." *Estate of Roman*, 914 F.3d at 798
(quoting *Monell*, 436 U.S. at 694).  "'Policy is made when a decisionmaker
possess[ing] final authority to establish municipal policy with respect to the action
issues an official proclamation, policy, or edict.'" *Id*. (quoting *Andrews v. City of
Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal
quotation marks omitted)).  "'Custom, on the other hand, can be proven by
showing that a given course of conduct, although not specifically endorsed or

authorized by law, is so well-settled and permanent as virtually to constitute law.'"

*Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

"To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). "Although a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss." *Estate of Roman*, 914 F.3d at 798. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id*.

Here, Fairweather has not alleged facts from which it can reasonably be inferred that a policy or custom of Lackawanna County violated his rights. Fairweather makes two general references to policy in this complaint. He alleges:

> Defendants are all actors under color of state law, defendants
> knows the "Rule of Law" provides relief and security through
> "Due Process," which is "Direct Policy" of a functioning
> society.
> . . .
> [T]he defendants has a "contractual obligation" to the citizens
> of the Commonwealth, to disclose fraud, injustice, and violating
> "direct policy" that may affect civil liberty's that the United
> States protects it's citizens from.

*Doc. 1* ¶¶ 18, 25. These oblique and conclusory allegations fails to meet the standard for pleading a claim against Lackawanna County under the policy-or-custom strand of municipal liability.

Another way for a plaintiff to present a claim against a municipality is to allege that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest*, 930 F.3d at 105 (quoting *Estate of Roman*, 914 F.3d at 798). "The latter avenue arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its . . . officers." *Id*.

A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline "need not allege an unconstitutional policy." *Estate of Roman*, 914 F.3d at 798. Rather, he must show that the municipality's failure to train, supervise, or discipline "its employees 'reflects a deliberate or conscious choice.'" *Id*. (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). In this regard, the plaintiff must show "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106. "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id*. In addition to deliberate indifference, a plaintiff asserting a municipal liability claim based on a failure or inadequacy of

42

training, supervision, or discipline must also allege causation. *Elliott v. Pennsylvania Interscholastic Athletic Assoc.*, No. 3:19-CV-01934, 2022 WL 987887, at \*5 (M.D. Pa. Mar. 31, 2022).  "[T]he causation inquiry focuses on whether 'the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 226 (3d Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

Here, Fairweather has not alleged facts from which it can reasonably be inferred that a failure or inadequacy of training, supervision, or discipline by Lackawanna County caused a violation of his rights.  He alleges nothing in this regard.

In sum, the complaint fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted against ADA Martinelli and John Does with the district attorney's office in their official capacities.

## V.  State-Law Claims.

Although Fairweather brings constitutional claims under 42 U.S.C. § 1983, some of his claims may be brought as federal claims, state-law claims, or both. *See Zvonek v. Walters*, No. 3:20CV1185, 2024 WL 759865, at \*5 (M.D. Pa. Feb. 23, 2024) (observing that "malicious prosecution; abuse of process; false arrest; and

43

false imprisonment . . . can be brought under section 1983 or under state tort law"). Construing the amended complaint liberally, we assume that Fairweather is bringing state-law claims as well as federal claims. Such state-law claims would fall within the court's supplemental jurisdiction.[7] But here there is no basis for the court to exercise supplemental jurisdiction over such claims.

Whether to exercise supplemental jurisdiction is within the discretion of the court. 28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state-law claim if the district court has dismissed all claims over which it has original jurisdiction. When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350

---

[7] Such state-law claims could also be brought if the court had diversity jurisdiction under 28 U.S.C. § 1332. The court has diversity jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between *inter alia* citizens of different states. 28 U.S.C. § 1332. Section 1332 requires complete diversity. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). There is complete diversity only when "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Id*. Here, Fairweather mentions § 1332 in his complaint as a basis for the court's jurisdiction. *Doc. 1* ¶1. But he alleges that he is a citizen of Pennsylvania and that so are the defendants. *Id*. ¶¶ 3, 10. Thus, there is not complete diversity, and the court does not have subject-matter jurisdiction under § 1332.

(1988)).  The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

There is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction over Fairweather's state-law claims. Accordingly, because we conclude that the complaint fails to state any federal claims upon which relief can be granted, the court should decline to exercise supplemental jurisdiction over Fairweather's state-law claims.

## VI.  Leave to Amend.

Before dismissing a complaint under the screening provisions of 28 U.S.C. § 1915, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).  As discussed above, Fairweather's claims fail on multiple basis—the favorable-termination rule of *Heck*, res judicata, statute of

45

limitations, judicial immunity, the Eleventh Amendment, and prosecutorial immunity. Accordingly, granting Fairweather leave to amend would be futile.

## VII. Request for Preliminary Injunctive Relief.

On February 9, 2026, Fairweather filed a document titled "Declaration of Sean Fairweather" and a document titled "Memorandum." *Docs. 10, 11*. As in his complaint, in these documents, Fairweather contends that his constitutional rights were violated in connection with his state criminal proceedings. *Id*. In the cover letter attached to these documents, Fairweather refers to preliminary injunction relief. *Doc. 10* at 1. To the extent that Fairweather intended what he filed to be a motion for a preliminary injunction, such motion is without merit.

A motion for a preliminary injunction is judged against exacting legal standards. "A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). A motion for such is properly granted only if such relief is the "only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). "It has been well stated that upon an application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937).

When evaluating a motion for preliminary injunctive relief, the court considers four factors: "'(1) a likelihood of success on the merits; (2) that [the plaintiff] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to [the defendant]; and (4) that the public interest favors such relief.'" *Smith v. City of Atl. City*, 138 F.4th 759, 779 (3d Cir. 2025) (quoting *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). "The first two factors are prerequisites for a movant to prevail." *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018). In other words, "[a] plaintiff must satisfy them both to be eligible for preliminary relief." *Veterans Guardian VA Claim Consulting LLC v. Platkin*, 133 F.4th 213, 218 (3d Cir. 2025). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

Here, as discussed above, Fairweather's complaint fails to state a claim upon which relief can be granted. Thus, Fairweather cannot show that he has a likelihood of success on the merits. Accordingly, his request for a preliminary injunction should be denied.

## VIII. Recommendations.

For the foregoing reasons, we recommend that the court deny Fairweather's request (*docs. 10, 11*) for a preliminary injunction. We also recommend that the court dismiss Fairweather's claims for damages that his guilty plea was involuntary, that he was subject to malicious prosecution in violation of the Fourth Amendment, that the defendants violated due process by fabricating evidence, and that he was denied his Sixth Amendment right to the effective assistance of counsel without prejudice because they are barred by the favorable-termination rule of *Heck*. We also recommend that the court dismiss without prejudice for lack of standing Fairweather's claims for injunctive relief. And we recommend that the court dismiss without prejudice the claims for damages against Judge Barrasse in his official capacity because they are barred by the Eleventh Amendment. We further recommend that the court dismiss Fairweather's other federal claims pursuant to 28 U.S.C. §1915A(b)(1) and § 1915(e)(2)(B)(ii). We also recommend that the court decline to exercise supplemental jurisdiction over Fairweather's state-law claims. Finally, we recommend that the court close this case.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within

48

fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 27th day of April, 2026.

**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge

49